```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS


MICHAEL L. GILBERT,              )
                                 )
                Plaintiff,       )
                                 )
vs.                              )     Case No. 06-1230-WEB
                                 )
MICHAEL J. ASTRUE,[1]            )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

 The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) William H. Rima III issued his decision on March 31, 2006 (R. at 16-26).  At step one, the ALJ found that plaintiff had not performed substantial gainful

activity since his alleged onset date of August 27, 2002 (R. at 16, 18).  At step two, the ALJ stated that plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, a history of childhood polio with leg surgery, status/post arthroscopic left knee repair, and a history of illegal drug abuse in current remission due to methadone therapy.  The ALJ further determined that hepatitis was not a severe impairment due to a lack of evidence, determined that the medical evidence does not establish a medically determinable impairment of postpolio syndrome, and found that the evidence does not document a seizure disorder (R. at 20).  At step three, the ALJ found that plaintiff does not have an impairment that meets or equals a listed impairment (R. at 20-21).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 25), but found at step five that plaintiff can perform other work which exists in significant numbers in the national economy based on a determination that the sedentary and light unskilled job base is only minimally affected by the plaintiff's nonexertional limitations (R. at 25-26).  Therefore, the ALJ concluded that plaintiff was not disabled.

**I.  Did the ALJ err in his finding that postpolio syndrome is not a medically determinable impairment?**

The ALJ's findings on this issue are as follows:

5

> The claimant testified that his history of polio causes constant leg, back, and hip pain from the heels to the back of his neck. However, Dr. Winkler noted that the normal lower extremity nerve conduction studies and examination findings contradict the allegations of post polio symptoms. It is noted that orthopedic specialist Dr. Estivo did not diagnose post polio syndrome. Although Dr. Schneider listed post polio syndrome as a diagnosis, he did not give any supporting evidence, but appeared to base this on the claimant's allegations. Dr. Winkler's opinion has been given the greatest weight in this case because it takes into consideration the objective findings and is in agreement with the findings and diagnoses of treating orthopedic specialist, Dr. Estivo. The undersigned finds that the evidence does not establish a medically determinable impairment of post polio syndrome. However, this does not preclude consideration of lower extremity and back pain as a result of the claimant's other impairments.

(R. at 20).

SSR 03-1P governs the development and evaluation of postpolio sequelae, which includes postpolio syndrome. SSR 03-1P, 2003 WL 21638062 at *1 (July 2, 2003). SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

The regulation states, in relevant part:

> We generally will rely on documentation provided by the individual's treating physicians and psychologists (including a report of the medical history, physical

>examination, and available laboratory findings) to establish the presence of postpolio sequelae as a medically determinable impairment. In the absence of evidence to the contrary, we will make a finding that a medically determinable impairment is established if any of the disorders discussed above have been documented by acceptable clinical signs, symptoms, and laboratory findings.
>
>**However, if evidence indicates that the diagnosis is questionable, we will contact the treating source for clarification, in accordance with 20 CFR 404.1512(e) and 416.912(e).**

SSR 03-1P, 2003 WL 21638062 at *5 (emphasis added).  20 C.F.R. §§ 404.1512(e) and 416.912(e) are as follows:

>(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>    (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. Parts 400 to 499 (2006 at 356, 900).

The ALJ found that Dr. Schneider, plaintiff's treating

7

physician, had diagnosed plaintiff with postpolio syndrome. Dr. Schneider identified postpolio syndrome as plaintiff's diagnosis or primary disability, and indicated that plaintiff had marked difficulty in standing or walking which results in severe functional limitations (R. at 174, 206, 214). However, the ALJ stated that Dr. Schneider did not give any supporting evidence for this diagnosis, and noted that Dr. Winkler, who reviewed the evidence and did not examine the plaintiff, opined that the diagnosis of postpolio syndrome was not supported by objective evidence (R. at 20, 326-327). The ALJ also noted that Dr. Estivo did not diagnose postpolio syndrome (R. at 20).

SSR 03-1P states that if the evidence indicates that the diagnosis of postpolio syndrome is "questionable," the agency "will" contact the treating source for clarification. It is clear from the decision that the ALJ found that Dr. Schneider's diagnosis of postpolio syndrome was questionable. Thus, the ALJ failed to comply with the social security ruling, which is binding on ALJs.

This finding by the ALJ at step two clearly tainted the remainder of the ALJ's analysis in this case. In his credibility analysis, the ALJ indicated that plaintiff "testified to inability to sit, stand, bend, lift, carry, climb stairs, or lie down due to back, leg, and hip pain from polio" (R. at 22). The ALJ then noted that "nerve conduction tests and examination

findings were negative for neuropathy or post polio syndrome" (R. at 22). The ALJ concluded that plaintiff was only partially credible because of this and other inconsistencies in the record (R. at 23). The ALJ also gave little weight to the opinion of Dr. Schneider (that plaintiff has marked difficulty standing or walking which results in severe functional limitations) because his diagnosis of postpolio syndrome was not supported by objective records and was not confirmed by Dr. Estivo or Dr. Winkler (R. at 24). Therefore, the case shall be remanded in order for the ALJ to recontact Dr. Schneider in accordance with SSR 03-1P.

**II. Did the ALJ err by failing to give controlling weight to the opinions of Dr. Schneider, in his credibility analysis, and by failing to consult a vocational expert at step five?**

Plaintiff has raised a number of other issues, including the ALJ's credibility analysis, the weight given to the opinions of Dr. Schneider, and whether the ALJ should have consulted a vocational expert at step five. The court will not address the first two issues because the clarification obtained from Dr. Schneider, as required by SSR 03-1P, may impact the credibility analysis, and the weight given to his opinions. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

Although the clarification may also impact the need for a vocational expert at step five, the court, because the case is

9

being remanded, will briefly discuss this issue.  Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the defendant must generally utilize expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy.  Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991). However, vocational expert testimony is not always required when a claimant has exertional and nonexertional impairments.  The mere presence of a nonexertional impairment does not preclude reliance on the grids.  The nonexertional impairment must interfere with the ability to work.  The grids should not be applied conclusively in a particular case unless the claimant could perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range.  Thompson v. Sullivan, 987 F. 2d 1482, 1488 (10th Cir. 1993); see Ochoa v. Callahan, 117 F.3d 1428 (table), 1997 WL 392252 at *2 (10th Cir. July 14, 1997); Golston v. Chater, 68 F.3d 483 (table), 1995 WL 619820 at *2 (10th Cir. 1995).

Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling.  Nonexertional capacity considers any work-related

limitations and restrictions that are not exertional. Nonexertional limitations include limitations in mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling and environmental limitations.  SSR 96-9P, 1996 WL 374185 at *5.

The ALJ's RFC findings for the plaintiff included both exertional and nonexertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant is restricted by back, neck, and knee pain to work which requires lifting or carrying up to 50 pounds occasionally and up to 20 pounds frequently, sitting about 6 hours of an 8-hour day, and standing or walking about 6 hours of an 8-hour day. The claimant is restricted to only occasional [left leg] pushing and pulling due to chondromalacia of the patella. **The claimant has nonexertional limitations precluding all ladder, rope, and scaffold climbing, and more than occasional stair and ramp climbing, kneeling, crouching, crawling, and stooping due to back and knee pain. The claimant has no manipulative, visual, or communicative limitations, but must avoid unprotected heights and other work hazards due to [his] knee disorder.** The claimant's substance abuse disorder is in reported remission and does not impose any vocational limitations.

(R. at 21, nonexertional limitations highighted).

In his decision, the ALJ gave the following reasons for not utilizing a vocational expert:

> The claimant's residual functional capacity restricts him to work at the light exertional

> level. If the claimant had the residual
> functional capacity to perform the full range
> of light work, considering the claimant's
> age, education, and work experience, a
> finding of "not disabled" would be directed
> by Medical-Vocational Rules 201.20, 202.21,
> and 202.22. However, claimant has
> nonexertional limitations which narrow the
> range of work that he can [perform]. The
> functional capacity to perform a full range
> of light work also includes the functional
> capacity to perform sedentary work as well.
> Approximately 1,600 separate sedentary and
> light unskilled occupations can be
> identified, with each occupation representing
> numerous jobs in the national economy.
>
> Social Security Rulings 83-14 and 85-15 state
> that sedentary and light work do not require
> more than occasional stooping and bending and
> do not require any crouching. Social Security
> Ruling 83-14 states that inability to ascend
> or descend ladders or scaffolding is not a
> significant restriction at any exertional
> level. Social Security Ruling 85-15 states
> that restrictions against climbing,
> balancing,[2] unprotected elevations and
> proximity to dangerous moving machinery are
> not significant at any exertional level. The
> sedentary and light unskilled job base is
> only minimally affected by the claimant's
> nonexertional limitations. The additional
> limitations have little or no effect on the
> occupational base of unskilled light work.
> There are many jobs existing in significant
> numbers in the national economy which the
> claimant is able to perform. A finding of
> "not disabled" is therefore appropriate under
> the framework of this rule.

(R. at 25-26).

Plaintiff's nonexertional limitations, according to the ALJ

---

[2]Although a limitation on balancing is not included in the ALJ's RFC findings (R. at 21), it is included in Dr. Estivo's report(R. at 202).  See also footnote 4.

12

are as follows:

1. no ladder, rope and scaffold climbing
2. only occasional stair and ramp climbing
3. occasional kneeling, crouching, crawling, and stooping
4. avoid unprotected heights and other work hazards

(R. at 21).[3]

According to SSR 85-15, "where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15, 1985 WL 56857 at *6. However, plaintiff has a number of other exertional and nonexertional limitations. SSR 85-15 goes on to state that certain occupations, including the light occupation of construction painter would be ruled out by a limitation on climbing ladders, and that "where the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a VS [vocational specialist] may be necessary." Id. Regarding

---

[3]The court would also note that Dr. Estivo, one of plaintiff's treating physicians, found additional limitations not included in plaintiff's RFC, including a limitation to occasional balancing, the need to avoid moderate exposure to extreme cold, wetness/humidity, and vibrations (R. at 202), and also indicated that plaintiff should be able to alternate sitting and standing as needed throughout the day (R. at 201). Although the ALJ indicated that he gave greater weight to the opinions of Dr. Estivo (R. at 23-24), he gave no explanation for not including these limitations in his RFC findings. SSR 96-8P states that "if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184 at *7. On remand, the ALJ must be sure to fully comply with the requirements of SSR 96-8P.

environmental restrictions, SSR 85-15 states that when such restrictions fall between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.  1985 WL 56857 at *8.

Given the numerous exertional and nonexertional limitations found by the ALJ, and possible additional nonexertional limitations included in Dr. Estivo's report but without explanation not included in the RFC findings, upon remand the ALJ will need to carefully consider the above provisions of SSR 85-15, and shall consider whether a vocational expert should be utilized in light of the combination of exertional and nonexertional impairments.  The court is concerned with the ALJ reviewing each nonexertional limitation in isolation, and not considering the combined impact of all the exertional and nonexertional limitations.  SSR 85-15 states that when a limitation in climbing and balancing is the only limitation, it won't have a significant effect on the broad world of work.  However, SSR 85-15 does not address the effect on the broad world of work when plaintiff's nonexertional limitation in climbing is combined with his other limitations, including occasional kneeling, crouching, crawling and stooping, and the possible limitations of occasional balancing, avoiding moderate exposure to extreme cold, wetness/humidity, vibration, and the ability to

alternate sitting and standing as needed throughout the day.

The court would also note that the requirement that plaintiff be able to alternate sitting and standing as needed throughout the day, as opined by Dr. Estivo, is significant in light of SSR 83-14, which indicates that most light jobs, particularly unskilled jobs, require a person to be standing or walking most of the workday.  SSR 83-14, 1983 WL 31254 at *4.  Therefore, it is critical for the ALJ to make a specific finding as to whether this and other limitations set forth by Dr. Estivo should or should not be included in the RFC findings, and if included, its impact on plaintiff's ability to work and the need to utilize a vocational expert in making that determination.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 5, 2007.

>                         s/John Thomas Reid
>                         JOHN THOMAS REID
>                         United States Magistrate Judge